# NO. 12-11-00395-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *MILLARD VAUGHN,*<br>*APPELLANT* | § | *APPEAL FROM THE 273RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *PAUL DRENNON AND WIFE,*<br>*MARY DRENNON,*<br>*APPELLEES* | § | *SABINE COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Millard Vaughn appeals from the trial court's judgment, rendered after a jury trial, in favor of his neighbors, Paul and Mary Drennon. In two issues, Vaughn contends there is no evidence to support the jury findings of nuisance and damages. We affirm.

## BACKGROUND

Millard and Barbara Vaughn have been neighbors with Paul and Mary Drennon since the mid-1990s. The two couples, who share a common property boundary, have been involved in litigation since December 2004. *See **Vaughn v. Drennon**, 372 S.W.3d 726 (Tex. App.–Tyler 2012, no pet.). In October 2010, the Drennons filed this suit against the Vaughns alleging nuisance and intentional infliction of emotional distress based on actions taken after December 1, 2008. The trial court directed a verdict in Barbara Vaughn's favor, and that ruling is not attacked on appeal. The intentional infliction of emotional distress claim was not submitted to the jury. The jury found that Vaughn's actions after December 1, 2008, constitute a nuisance. It awarded $2,000.00 to Paul Drennon and $10,000.00 to Mary Drennon. Millard Vaughn appealed.

## STANDARD OF REVIEW

When a party is attacking the legal sufficiency of the evidence supporting a finding on an issue for which he did not have the burden of proof, he must show that no evidence supports the finding. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 215 (Tex. 2011). We may sustain a no evidence challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998). Evidence is legally sufficient if it would enable reasonable and fair minded people to reach the verdict under review. *Exxon Corp.*, 348 S.W.3d at 215. Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact, and the legal effect is that there is no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). We credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *Exxon Corp.*, 348 S.W.3d at 215.

## NUISANCE

In his first issue, Vaughn contends there is no evidence that his acts substantially interfered with the Drennons' use and enjoyment of their property. Specifically, he argues there is no evidence that the lights Vaughn placed near the property line are unusually intense or extreme or that they substantially interfered with the Drennons' property rights. He also asserts there is no evidence that Vaughn's cameras substantially interfered with the Drennons' use of their property or that Mary's fear of being photographed had any effect on her daily life. Further, he contends there is no evidence that his loud music substantially interfered with the Drennons' property rights.

**Applicable Law**

A nuisance is a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it. *Barnes v. Mathis*, 353 S.W.3d 760, 763 (Tex. 2011). Actionable nuisance may fall into one of three categories: negligent invasion of another's interests; intentional

invasion of another's interests; or other conduct, culpable because abnormal and out of place in its surroundings, that invades another's interests. *City of Tyler v. Likes*, 962 S.W.2d 489, 503 (Tex. 1997). Nuisance is a field of tort liability, a kind of damage done, rather than any particular type of conduct. *Id*. at 504. A nuisance can occur in one of three ways: (1) by physical harm to property; (2) by physical harm to a person on his or her property, such as an assault on his or her senses or by other personal injury; or (3) by emotional harm to a person from the deprivation of the enjoyment of his or her property, such as fear, apprehension, offense, or loss of peace of mind. *Tex. Union Pac. Res. Co. v. Cooper*, 109 S.W.3d 557, 560 (Tex. App.–Tyler 2003, pet. denied) (op. on reh'g). Noise and glaring light can be a nuisance. *See GTE Mobilnet of S. Tex. Ltd. P'shp. v. Pascouet*, 61 S.W.3d 599, 615 (Tex. App.–Houston [14th Dist.] 2001, pet. denied).

**Discussion**

The Drennons complain of bright lights shining on their property, loud music and hammering, which goes on into the night hours, being constantly photographed, and Vaughn's habit of keeping a firearm within reach. Question 1 asked if "Vaughn's actions from and after December 1, 2008, constitute a 'nuisance,' as defined below, which caused personal discomfort, annoyance and inconvenience to Mary Drennon?" Question 3 asked the identical question regarding Paul Drennon. Both questions were accompanied by the following instruction:

> You are instructed that by the term "nuisance" as used in this charge is meant any condition, brought about by one party in the use of his property, so unusual and excessive that it necessarily causes injury or damage or harm or inconvenience to another party, substantially, materially and unreasonably interfering with the latter's comfort, taking into consideration the nature and use of the property of both parties and the character of community in which they are situated, and which condition would be substantially, [sic] offensive, discomforting and annoying to persons of ordinary sensibilities, tastes and habits living in the locality where the premises are situated.

In answers to interrogatories, Paul explained that Vaughn's actions have caused him great and continual emotional distress. Mary explained that she suffers severe emotional distress to the point that she is very hesitant to ever go outside her house. She frequently cannot get a good night's sleep because of the constant noise generated by Vaughn and because of the lights that continuously shine on and into the Drennons' house.

3

Mary testified that Vaughn tries to make her and Paul miserable. Because Vaughn always carries a gun, and once threatened to shoot them, she is afraid to go out in her yard. She explained how Vaughn aims a camera at her and provides a running narration, describing her actions. She said the lights shine on her property 98% of the time. Mary testified that she and Paul love being outside and Vaughn's actions changed their lives because they cannot enjoy the outdoors. She stated that she is constantly afraid of being photographed and watched, describing it as a continuing dread and fear. Further, she explained, she never feels free when she steps outside. She does not feel like she can enjoy the property that she worked hard for or that she can live in peace.

Neighbor Joan McGee testified that it is stressful living in that neighborhood, knowing that every move you make is being watched. She explained that every time the Drennons go outside, Vaughn drives up to their property to see what they are doing. She said the camera is right behind their house and everything they do in their backyard is seen by the camera. McGee stated that the cameras affect the Drennons' enjoyment of their property.

Bobby Ener, who lives down the road from the Drennons, explained that Vaughn's light is very bright and shines through the glass on his front door, 800 feet away. James Crocker, also a neighbor, testified that the light is too bright to be so close to the Drennons' house. He also stated that he has heard Vaughn's music a few times. He testified that Vaughn carries rifles in his truck, pistols in his pockets, and one in his boot. One time, Vaughn pointed a gun at Crocker, cocked it, and threatened to kill him.

Paul Drennon explained that Vaughn's actions, his use of cameras, bright lights, and loud music have affected their enjoyment of their property. He stated that Vaughn's actions disturb them and he wants to be able to live without being bothered or harassed by Vaughn. He explained that for the last several months, he and Mary go in the house when Vaughn is around.

The Drennons chose this rural area near a lake to retire after living in a Dallas suburb. They love being outdoors, working in their yard, and maintaining a vegetable garden. Testimony shows that, due to Vaughn's actions, they no longer enjoy being outside or working in their yard. Vaughn's actions disturb them and they go inside their house when Vaughn is near. Mary stated that she cannot live in peace. This is some evidence that Vaughn interfered with the Drennons' enjoyment of their land by causing unreasonable discomfort and annoyance to them. *See*

4

*Barnes*, 353 S.W.3d at 763. The evidence would enable reasonable and fair minded people to reach the verdict under review and is therefore legally sufficient. *See Exxon Corp.*, 348 S.W.3d at 215. We overrule Vaughn's first issue.

## DAMAGES

In his second issue, Vaughn asserts there is no evidence that the Drennons sustained any damages. He contends there is no evidence that Vaughn's lights, cameras, and music caused substantial interference with the Drennons' use and enjoyment of their property and, therefore, there are no damages. Further, he argues, they produced no evidence of any damages resulting from emotional distress, discomfort, or annoyance.

A plaintiff may recover damages for the discomfort in the use of the plaintiff's property, as well as annoyance, caused by a nuisance created by the defendant. *See Daniel v. Fort Worth & Rio Grande Ry. Co*., 72 S.W. 578, 579 (Tex. 1903). "[T]here may be no arithmetical rule for the estimate of damages. There is, however, an injury, the extent of which the jury may measure." *Baltimore & Potomac R.R. Co. v. Fifth Baptist Church*, 108 U.S. 317, 335 (1883).

As explained above, the record shows that Vaughn's actions interfered with the Drennons' enjoyment of their property. They asked the jury to award them $1,000.00 per month for thirty-three months. The jury awarded damages to Mary in the amount of $10,000.00 and awarded damages to Paul in the amount of $2,000.00. There is more than a scintilla of evidence supporting the jury's damage awards. *See Daniel*, 72 S.W. at 579; *Pascouet*, 61 S.W.3d at 616. We overrule Vaughn's second issue.

## DISPOSITION

The evidence is legally sufficient to support the jury's findings. Accordingly, we *affirm* the trial court's judgment.

SAM GRIFFITH
Justice

Opinion delivered June 25, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

5



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JUNE 25, 2013**

**NO. 12-11-00395-CV**

**MILLARD VAUGHN,**
Appellant
V.
**PAUL DRENNON AND WIFE, MARY DRENNON,**
Appellees

Appeal from the 273rd Judicial District Court
of Sabine County, Texas. (Tr.Ct.No. 12,570)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the appellant, **MILLARD VAUGHN,** for which execution may issue, and that this decision be certified to the court below for observance.

Sam Griffith, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

6